Good morning, your honor. Stephanie Fuentes from the Office of the State Appellate Defender on behalf of the petitioner Brandon Zareski. I would like 20 minutes for argument. Good morning, your honor. Assistant State's Attorney Joseph Alexander on behalf of the people of the state of Illinois. I believe I can take my argument for 15 minutes. Okay. Thank you. May it please the court. This case must be remanded for further proceedings either because post-conviction counsel provided unreasonable assistance or due to the glaring conflict of interest. The right to reasonable assistance to post-conviction petitioners includes the correlative right of conflict-free counsel. If post-conviction counsel is asked to mold the petitioner's allegations into legally cognizable claims, that counsel must be as conflict-free as the trial counsel. A clear conflict arose here, whether one wants to call it per se, inherent, or actual conflict, where counsel... You're saying it's all three? You can find... The type of conflict that arose could qualify for an inherent conflict of interest or actual conflict of interest due to the multiple representation of Mr. Zareski. It's unique in this case that counsel is also Zareski's counsel in post-trial proceedings, on direct appeal, and in collateral proceedings. There is a line of cases which Mr. Zareski has cited in his opening brief, the Lodin line of cases, where they recognized it as either inherent or per se conflict of interest, where the status... And in those cases, they looked at the status of the attorney and the type of claims that he had to raise. But this doesn't fall under any of the per se criteria, does it? Well, the list, as we read the list, as in, like Horton Rand, as he's laid out, doesn't seem that that list is exhaustive. Because after those three categories had been decided, we have cases such as Lodin, Keener, and Willis, and even Perkins, which kind of recognize that maybe there's this new type of conflict that could possibly qualify as per se conflict of interest as well. So are you advocating that if an attorney represents a defendant on direct appeal, that he can no longer represent him in post-conviction proceedings? Is that your position? No, that is not my position. So what you're saying then is that he can, but there has to be some obvious or apparent conflict or impropriety that should prohibit him from doing it? If he's required to raise his own ineffectiveness or failures to develop the claims, to avoid forfeiture of those claims in a post-conviction petition, then he should withdraw. But if you can't point to what it was that he should have done, you know, with some persuasiveness, then you're really just whistling in the dark, aren't you? I would disagree. Mr. Zyrowski, as his petition has pointed out, has at least six examples of where the conflict, this glaring conflict under which counsel labored under, affected his representation. If we look at cases that… What is the first one? The first one was the claim, the ineffectiveness claim regarding the cross-examination of Orlando Crespo about seeing an inoperable gun the day before the shooting. And how is that relevant? Because we know it's inoperable the day before, so what? But that, this is totally about procedural error. As post-conviction counsel, as CADO has established, legal assistance built to retain and appoint a counsel requires counsel to adequately shape the claims into proper legal form. We don't have to look at the merits. This is just procedurally. As Turner has established, it is well known that post-conviction counsel must attempt to overcome procedural bars, such as forfeiture, by raising a claim of ineffective assistance of appellate counsel, which he failed to do here. Therefore, because it's a procedural error, this should go back for a non-conflicted counsel to amend the claim. You mean the same claim which has no merit, if we look at the claim itself? Well, we do not know if it has merit or not, because the circuit court is the one who is supposed to decide whether it has merit. And because it wasn't properly presented… But we can look at the claim itself, whether that has any relevance at all to the following day. We know the day before was inoperable, so what? It does have…Rendon also raised a claim of second-degree murder, regarding the second-degree murder instruction. So that claim would be relevant because nobody really testified that the decedent in the case had used a gun. But that's a question of strategy. As to whether to cross-examine, that's not the analysis that is conducted under conflict, though. If you look at Collier and Sullivan, they don't apply a Strickland standard. This is not a right, you know, it's a statutory right. So what you look at is, was there an actual conflict? We've said there is, because counsel represented Mr. Zyrowski on multiple levels. And whether that conflict affected counsel's decision in how to present a claim. Don't we get to look at what tests the reasonable assistance that counsel provided? I mean, you're saying we should just send it back and not look at the merits of the claims, right? You don't have to look at the merits of the claims. Why would we want to do that? Does that make any sense? When post-conviction counsel, reasonable assistance is a lesser standard than it would be for direct appeal or trial counsel. It's a lesser standard, but at the bare minimum. So you're treating it just the same. No, I'm not. If I were treated the same as effective assistance of counsel, I'd be asking you to apply a Strickland prejudice to determine whether the merits of the claim, whether it would have made a difference in the outcome of the trial. That's not what I'm asking for. But why isn't that something we should consider? Because that's not the test that applies when you look at actual conflict since the Sprecher line of cases. Sprecher specifically says, we look to the dictates of Collier v. Sullivan, which says you demonstrate a conflict. And then once you demonstrate a conflict, you must point to specific defect in counsel, strategy, tactics, or decision that's attributable to the conflict, which we maintain Mr. Zuroski has done throughout the petition. But there's a difference here. In those cases, the counsel did not file the PC. Here, instead of a pro se filing, which is usually the case, and the counsel comes in on the second stage, we have counsel on the first stage. So isn't that a different situation? And why shouldn't we consider it? If you're saying it's not a different situation, then my question is, why shouldn't we consider it a different situation? You're saying we should consider it the same. Well, this is clearly a second stage proceedings. We're not raising whether this is a reasonable assistance claim at first stage proceedings. This is clearly at second stage. By including these claims in the petition, under the ethical obligations that any attorney does by drafting a plea, post-conviction counsel believed that claim had merit. If he had, he believed that claim had merit. He should have done everything possible to adequately shape the form of that claim into proper legal form. Even when he drafted his first petition, he asked leave from the circuit court so that he could do further investigation and amend the petition. The state, in its motion to dismiss, brought the deficiencies to the post-conviction counsel's attention. And instead of taking that as an opportunity, he tried to wiggle his way out of having to argue his own ineffectiveness, which is clearly attributable to conflict of being Soresky's counsel on direct appeal. Such a significant conflict, as we were discussing, also caused counsel to provide unreasonable assistance. I know this court asked, requested for self-evidential briefing to determine what's the standard that should be used to evaluate a claim of alleged unreasonable assistance by routine counsel. Again, just to clarify, this is a second stage. We recognize that Cotto says that reasonable assistance applies once the petition advances to second stage. But Cotto also recognized, and the state has conceded in their supplemental briefing as well, that even though 651C doesn't apply to routine counsel, we should still look to the principles of 651C because there's an overlap between the principles of 651C and reasonable assistance. At the bare minimum, counsel should have adequately presented the claims, which... But if you look at those claims, you're saying we can't look at those claims and decide whether they have any merit or whatever, right? Whether there's any prejudice. I mean, this could be completely a waste of time to send it back unless we look at what those claims were that you're raising. If this court was to follow that line of reasoning, it would go against the Illinois Supreme Court president, which is... Which is which case? Turner, saying that... Turner was a different situation. Turner was no defense. Counsel really didn't do a job at all, right? That was complete failure of counsel. But there's also a case, Milan, who recognizes that even if there's no effectiveness, the effect is the same. Due to this unreasonable assistance at post-conviction counsel, the trial for the circuit court, which is the proper trier of the merits of these claims, didn't get to consider the claims. So Turner should equally apply here. This is a routine Turner procedural issue. And, again, Turner, Suarez have said that where procedural mandates are not complied with, we do not look at the merits. But those are different... Again, both cases can be distinguished from this case because in this case... Well, first of all, I sound like Turner because of the facts. But with regard to Suarez, at the initial PC, it was filed by the same counsel, as opposed to being a pro se filing. Again, there should be no... Once a petitioner reaches the second stage, there should be no distinction between the basic duties that both retained and appointed counsel, even if they drafted the petition, must meet. And I would disagree that Turner is not applicable here. I mean, we had recently the recent Schlosser, Schlosser 2 decision, where the 6th Division recognized that, okay, although he did amend one of the petitions and presented it properly, he still didn't do everything that he should have done. And because of that, they applied Turner. We're saying the same thing here. There was procedural things that post-conviction counsel should have done. He should have overcome the procedural bar of waiver. He should have removed the claims that... or attached outside evidence to the claims that were barred by res judicata. And he should have known how to adequately present in proper legal form the actual innocence claim. He didn't do anything. So we could argue that it's like Turner as well, but we don't have to because there's other cases in this other divisions of this court that have said where even if you present one claim, it still doesn't matter if you did a terrible job or deficient job at everything else. That's what happened here. And even on duress appeal, this attorney was called out for not citing any legal citations or authority on duress appeal. If you look at the record as a whole, counsel lifted verbatim copies from the motion for retrial, I mean, claims from the motion for retrial, raised them on duress appeal, copied those again, and raised them in the post-conviction petition. I don't believe that anybody who has an ethical duty, an attorney who has an ethical duty to properly represent his client should do that. And that's why cases such as Turner and Sparrow should apply, because this is just a procedural issue. Mr. Zuroski shouldn't be denied process just because he retained counsel. And it seems that in light of Cotto and in light of cases like Cotto and Tate, the Supreme Court is moving away from this distinction of a defendant's or a petitioner's ability to pay. As members of the Bar know, and Your Honors, retained counsel sometimes is not more than just a name. You have cases like the Kelly case, where both retained and appointed counsel were found unreasonable because they didn't adequately present the claims, and they let the petition languish for anywhere from 9 to 14 years. We know that retained counsel should be held to some standard, and Cotto says that standard is unreasonable assistance. And you look at the cases such as Turner, Schlosser, Aguiano, and Suarez, that when a post-conviction retained counsel does not comply with just the bare minimum that he should be done, that minimum right, which is a statutory right to reasonable assistance, just does not exist. Again, we maintain that it is not the duty of this Court to determine the merits of the claims, because as recognized in Turner and Johnson, how are we to believe that these claims have been properly developed if the record shows that counsel has committed multiple procedural errors? What should be done is for a non-conflicted counsel to be able to look over the petition, amend the petition, and present any ones that he finds meritorious to the Circuit Court. But at this time, we cannot decide whether those claims have merit due to the unreasonable assistance. Now, if you do not have any more questions on the conflict or the reasonable assistance, I would basically like to touch the substantial showing for the second degree murder instruction. Mr. Zaleski raised in his petition that he wasn't adequately or he was given no advice as to the differences between the sentencing consequences of first degree murder and second degree murder. As such, the petition makes a substantial showing because we have cases such as the 5th District Brown that has recognized that to be able to properly request or obey the second degree murder instruction, a petitioner needs to know the sentencing consequences. In Brown, the attorney gave inadequate, incorrect advice as to the sentencing consequences. He said that the defendant would have to serve a term of years when he was mandatory alive because of a homicide case. Here, the affidavit, Mr. Zaleski is claiming in his affidavit that he was not advised as to the difference between second degree and first degree murder, that he wasn't advised as to the maximum term, the firearm enhancement, the truth in sentencing, and the record doesn't rebut that claim. What was his defense in the trial? Self-defense. Did he testify? No, he did not. So how did his self-defense come up in the trial? Because there had been some exchange between Mr. Zaleski and Mr. Nieves. Verbal. Verbal. And that Mr. Nieves may have said, I'm going to go down and mess with Brandon. There is also a gun found next to Mr. Nieves. They're not verbal. But there was a gun. Yeah, there was a gun. So if you have, and Mr. Nieves was a stocky man who was tall, so if you see a man such as Nieves charging at you or coming down the stairs, running towards you with a gun, how would you know that that gun was inoperable? How would we know it was self-defense? Well, there was some evidence, there was some evidence that there was, because there was this. That's what I'm asking, what was it? What was the evidence that would trigger a self-defense notion or defense to a jury? What would a jury rely on to say, oh, this man shot that man in self-defense? What facts were in evidence that would reasonably allow a jury to reach that conclusion? To Orlando Crespo, which was Jonathan Nieves' friend. Right. He was the one who testified as to the exchange of gang words he said. Verbal exchange. The verbal exchange and everything that Mr. Nieves had told him as to, oh, that's Brandon, he's a member of a rival gang, I'm going to go mess with him. Orlando Crespo said, and he testified that he thought that that meant that Mr. Nieves was going to run down the stairs and fight with Brandon. So he follows him down the stairs thinking that a fight was going to ensue. So that's the testimony that the jury heard. The state and the trial court agreed that there was that evidence, plus finding the gun next to Jonathan Nieves, testimony that, Orlando Crespo's testimony also that Jonathan Nieves may have been running down the stairs, that that was sufficient to give the second degree murder instruction and that there was sufficient evidence for self-defense. And the judge said he'd give the instruction if the defendant wanted it. Correct. And the state also agreed. The state was the one who brought it up first. They were like, well, if he is raising self-defense, he's entitled to second degree. And trial counsel was, it seems based on the exchange and the record, that he was kind of confused what was going on. At first he said yes, and then he was like, let me think about it, let me go talk to Brandon. There was off-the-record discussion with Brandon, with Mr. Zaresky. And when they're brought back, when the case is recalled, the attorney returns with Mr. Zaresky, and the trial court simply asks whether he wants to waive the second degree murder. But there's no exchange of sentencing consequences or anything like that. Well, shouldn't there be? Isn't that a strategic decision? And didn't that Supreme Court of Illinois self-state in People v. Wilmington? Well, Wilmington involves, this case is distinguishable from Wilmington because Wilmington talks about trial court error, like the trial court refusing to give a second degree instruction. We're raising this as ineffective assistance of counsel, so that's how it was raised. So we're not saying that the trial court should have admonished him, but we're just saying there's no on-the-record discussion between trial counsel and Mr. Zaresky. So Wilmington would be distinguishable in that, and we acknowledge that in our reply brief. What about the fact that the victim was shot in the back of the head and the other shot was in the back of his leg? That doesn't seem to suggest self-defense. Well, we have said that. We don't know if he was shot in the back of the head because he was reaching towards to get the gun or was he reaching and going to come back. You know, we don't know. And that's why also the actual innocence claim that the post-conviction counsel failed to properly present, there's some testimony there by Myra Monducano in her affidavit saying that she lived in the apartment. She was there on the night of the shooting with her dad. They hear John Benavis fighting, saying some words, running down the stairs, and they saw him fire a gun. So if this petition would go back and get amended to properly raise that claim of actual innocence, that would help Mr. Zaresky's second-degree murder instruction because there was no testimony. Are you saying that an actual innocence claim is aided by a self-defense claim? No, but the actual innocence claim would aid if that testimony was included or considered by the circuit court. It would aid in supporting the self-defense argument because there was no testimony at trial, conveniently, because it was just the testimony of Mr. Nieves' friend and his girlfriend. Nobody testified that Mr. Nieves shot a gun. That claim, that testimony, is based on an affidavit that wasn't properly presented to the circuit court because it was also used to not just support a preceding claim of actual innocence, but also an ineffective assistance to trial counsel claim for failing to investigate and locate Myra Monducano and call her to testify at trial. If there's no further questions. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Joseph Alexander on behalf of the people of the state of California. In this case, the Illinois Supreme Court case of People v. Lawton disposes of Petitioner's claim of a conflict of interest and unreasonable assistance of counsel. In this case, there was no per se conflict of interest. The Illinois Supreme Court and this Court has recognized that there are three categories of per se conflict of interest and an attorney arguing his or her own ineffectiveness does not fit into one of those three categories. Defendant argues that the language in Lawton, excuse me, that an attorney arguing his or her own ineffectiveness is an inherent conflict of interest and defendant attempts to equate that language with a per se conflict of interest. There's no merit to that argument simply because half the Court wanted to create another category of per se conflict. Furthermore, the Court would have used the language per se conflict instead of purposely choosing to say inherent conflict of interest. Furthermore, the cases post-Lawton demonstrate that the Court consistently and repeatedly has held that there are only three types of per se conflict of interest and again, alleging one's own ineffectiveness is not one of those per se conflicts. Defendant then attempts to argue in this Court that there was an actual conflict of interest. I would like to point out that defendant never raised that in their opening brief. They simply said that this was a per se conflict of interest. So that argument is waived. But even if this Court wants to consider that there was an actual conflict of interest, there wasn't. To establish an actual conflict of interest, defendant must point to some specific defect in counsel's strategy, tactics, or decision-making attributable to a conflict. In this case, post-conviction counsel did not argue ineffective assistance of appellate counsel. Post-conviction counsel was also post-trial counsel in the trial stage and direct appeal counsel. Under Lawton, it was proper for counsel to argue fundamental fairness, which is what post-conviction counsel did in this case, instead of ineffective assistance of counsel. If we look at Lawton, the Illinois Supreme Court stated, if the defendant's trial counsel continues to represent him on direct review and does not raise the issue of ineffectiveness of representation he provided, notions of waiver will yield to considerations of fundamental fairness, and defendants will still be permitted to challenge trial counsel's ineffectiveness through proceedings under the Post-Conviction Hearing Act. So what counsel did in this case by arguing fundamental fairness was exactly what the Supreme Court says he should have done when we are presented with a situation where defendant is represented by counsel at multiple stages. And because counsel followed the law in Lawton, defendant's claim of unreasonable assistance necessarily fails, because counsel can't be unreasonable if he's following the law. But they're saying that there's a procedural default, defect in what counsel did, and that we should not, we should just acknowledge that and then send it back to the trial court. Well, that argument again fails because under Lawton there was no procedural defect. Counsel did what he was required to do. Under the laws of this state, post-conviction counsel has to attempt to overcome forfeiture. And in this case, counsel did do that. Counsel argued the best way to overcome forfeiture based on the facts and circumstances of this case, which was arguing fundamental fairness. So defendant's argument that there was some type of procedural error is incorrect, because counsel did exactly what counsel was supposed to do under Lawton. So by that, on that same token, counsel can't be unreasonable for doing what the Supreme Court said he should do in a situation like this. And if we look at People v. Cotto again, that actually disposes of defendant's unreasonable assistance of counsel claim. Defendant talks about how he's not supposed to show prejudice. But in Cotto, what the court said after looking at the record and finding that counsel was reasonable in that he filed a petition, he supported the claims, he attempted to overcome forfeiture, the Supreme Court then asked, what else was he supposed to do? Defendant hadn't presented anything else that counsel could do. And the court found that as an important factor. And in this case, defendant hasn't stated anything about what post-conviction counsel could have done in addition to all the efforts he put in. So based on Lawton, the conflict of interest claim is without merit, and the unreasonable assistance claim is without merit. Turning to defendant's argument about the second-degree murder instruction and his knowing waiver of that instruction, defendant doesn't have a say in this situation about the trial strategy of counsel. The Supreme Court has recognized that there are certain decisions that are within the sole powers of the defendant and only the defendant can make. And one of those decisions is whether to give a lesser-included offense instruction. The Supreme Court has said that second-degree murder is not a lesser-included offense. Second-degree murder is a lesser-mitigated offense. And whether to give a second-degree instruction is a matter of trial strategy. And as we know, it's well-established that matters of trial strategy are generally immune to attacks of ineffective assistance of counsel. But isn't People v. Brown coming up differently? People v. Brown does not overrule Wilmington. No shit. And if we want to talk about what is reasonable and what a second-degree instruction is, we have to look to Wilmington. And as Wilmington says, it's not a lesser-included instruction, it's a lesser-mitigated. So we should follow Brown? You should follow Wilmington, which says that Brown was after Wilmington. Brown was after Wilmington, but Wilmington is the proper course of action, or the proper case for this court to follow. And even if somehow counselors should have given a second-degree murder instruction, even though it was trial strategy and the defendant agreed not to give that instruction, which needs to be pointed out, there is a discussion on the record between the defendant and the trial court where the defendant specifically asked if the defendant wanted the second-degree murder instruction, and he said he didn't. That needs to be honored. It should not be undermined at this point, and later in the game after the defendant's trial strategy proved unsuccessful, to now come back with a self-serving affidavit saying that I didn't know what the sentencing range was, even though the defendant knew that second-degree murder was a lesser offense, which is going out in this record because it was talked about as being lesser than first-degree murder. But even if we accept for the sake of argument that counselors should have requested this instruction, this court has already determined in its prior ruling on direct appeal that giving a second-degree murder instruction will change the outcome of trial. So based on this court's own findings, the defendant's argument on appeal now is without merit because the defendant cannot get around the fact that the victim was shot in the back of the head and in the calf, which this court has said was evidence of the victim running away, and there was nothing reasonable at that point about the defendant shooting the victim. So for those reasons, the defendant's second-degree murder instruction issue is without merit and should be rejected. Turning finally to the defendant's claim of actual innocence, again, nothing in that affidavit would change the outcome of trial. Even though the trial could have found that it was newly discovered evidence, we don't even have to argue that point at this time because if we look at what this affidavit says, this person saw the victim with a gun and fired it. First of all, that is not supported by the record. It's actually rebutted by the record because the firearms expert determined that the gun was inoperable and there was no forensic evidence corroborating the fact that the victim actually fired this gun and there was no spent cartridge. There was no spent cartridge cases. There were little bullets recovered that could be matched to the gun that was found by the victim. Even though there was gunshot residue on the victim's hand, as we know, that doesn't mean that the victim actually fired the gun. He could have been in the environment with the gun. There could have been gunshot residue on his gun from some previous incident, and we don't know how that got there. But again, none of that matters because her seeing the victim shooting the defendant doesn't overcome the fact that the victim shot him back in the head, which completely defeats any claim of self-defense. So the trial court probably found that this affidavit was not of such a conclusive character as it would probably change the outcome of a retrial. And for that reason, the trial court probably denied relief under this actual innocence claim. And we are asking that this court affirm the trial court's decision on that issue and all of the issues in this case. And for the reasons stated here and in our brief, we ask that this court affirm the trial court's dismissal of the defendant's second-stage post-conviction petition and affirm the defendant's conviction and sentence. If there are no further questions from this court. Thank you very much. Thank you. Your Honors, the State misreads Wadden. Wadden simply stands for the proposition that counsel should, if he continues to represent an attorney, where he'd be required to argue his own ineffectiveness, that is inherent conflict and possibly per se conflict. The same rationales, the same justification, the same rationale for having the per se rule and the inherent rule are substantially the same. Because what you're trying to avoid is unfairness to a petitioner who may not be able to determine whether his representation was affected by this conflict. And by putting the honest petitioner in a position where he might have to choose between conflicting duties. We maintain that Mr. Zareski did not waive the actual conflict because in his opening brief he pointed to specific examples of issues that were affected by conflict. And he also argued prejudice. He said because of this conflict there is procedural defects that precluded the circuit court from considering his claims. Now as to. . . What's your response to Mr. Alexander's argument about that Mr. Frankel did the procedural. . . He was fair. I mean there was no unfairness in what he did. Well we, again we maintain the state is wrong. Because he did. . . So Mr. Frankel in his response to the state's motion to dismiss he regurgitated this like boilerplate paragraph of well these claims should not be considered forfeited or should be considered despite res judicata because. . . Put that to the side. Put that to the side. Yeah. Because that's probably not going to go anywhere. But what about the other. . . The waiver issue. Yeah. And when he said fundamental fairness. Right. But again the reason why I talked about that boilerplate paragraph is because he didn't tie fundamental fairness to a specific claim. He just regurgitated this boilerplate paragraph and then went into the claims without tying which claims should be considered a fundamental fairness or not. To properly develop a fundamental fairness claim you follow what Pittsburgh, the Pittsburgh test, which is cause and prejudice. He couldn't do that. He didn't do that. And he wouldn't be able to do that because cause was attributed to his conflict. And we know throughout his handling of the post-conviction petition and at the proceedings in the circuit court he couldn't do that. He avoided it. Therefore, he did not cure any procedural defects by arguing fundamental fairness. Again, and also Cotto, in their analysis of whether retained counsel rendered reasonable assistance, they followed it up with Perkins. And they treated it as a case where appointed counsel doesn't file a 651C certificate so you look to the record to see if there's a showing that he complied with the duties encompassed, that overlap between 651C and reasonable assistance. That analysis in Cotto, it wasn't a prejudice analysis. It didn't consider the merits. It simply considered is there a showing that he did something. And that in Cotto is also somewhat distinguishable because it talks about timeliness. And there's no set standard of what you have to raise to overcome timeliness. It's just that you have to consult with your client, ascertain any reason possible to excuse that untimeliness. For procedural default, there's a specific test that the state ignores, a test that has been reaffirmed since Turner, which is to avoid procedural default of a claim, you raise the simple routine amendment of ineffective assistance of appellate counsel. He didn't do it. Therefore, because he couldn't do it because of the conflict, this case should go back. Now, as to the second-degree murder, briefly just Wilmington has not been followed in similar cases as here. It continues to hold up. Defendant has a personal right to decide whether to tender a second-degree murder instruction. I cited Brown. Sousa-Ruskey has also cited a Fifth District case, Shambler-Lehida, I'm sorry if I mispronounced it, that did follow Wilmington. But neither of those cases discuss Wilmington. No, neither discuss Wilmington because, as we argued in the report, this is a claim of ineffective assistance of trial counsel. Wilmington is completely trial court error. And we'd ask this court to reject the state's request to speculate as to the merits of the second-degree, whether there would be a different outcome. While the appellate court considered the evidence overwhelming, that shouldn't be enough. Below, the jury did not consider second-degree murder. Therefore, whatever finding the appellate court had in the juror's appeal is not relevant because the jury didn't consider second-degree. And again, just for the actual innocence, whether the affidavit is material, it's not whether the test that the state is asking to apply is a heightened standard. It's just when you look at the affidavit, would it probably change the result on trial? Sure. Nobody testified at our trial that Jonathan Nieves shot a gun. So the affidavit brings in that testimony. And the state wants me to think that Mr. Zareski is an expert on guns, who would have known that the gun was inoperable as Jonathan Nieves challenged at him with the gun. There's no indication, like, how close they got or if that's even feasible. Therefore, we believe that the affidavit's material. We ask this court that either under Arguments 1 and 2, bring me on for further proceedings, or under Arguments 3, 4, and 5, bring me on for a third-stage evidentiary hearing. Thank you, Your Honor. Thank you. Thank you, both counsel, for your briefs and excellent arguments. And I also want to thank you for your supplemental briefs, which you both filed timely. And I know you didn't have much time to do it, and we appreciate you being able to do that so we didn't have to move this date. So thank you very much for that. We'll take the case under advisement and stand adjourned. Thank you.